1808.

Saturday,
December
31st.

CRAWFORD *against* BARRY.

*SCIRE facias* against a *garnishee*. A foreign attachment against *Thomas O'Gormond* was laid at the suit of the plaintiff, in *March* 1803, upon certain goods, consisting of chairs and cabinet ware, in the hands of the defendant; and after judgment against the principal, and an inquisition of damages, this action was brought against the garnishee. He pleaded *nulla bona;* and at a nisi prius before *Yeates* J. in *November* last, the jury, who had never seen the goods, found that there were effects in the hands of the defendant to the value of 801 dolls. 30 cents.

*Levy*, for the defendant, moved the court to set aside the verdict, and to grant a new trial, for several reasons; but the material one was, that the jury were bound to find the specific goods or effects in the garnishee's hands, and had no right, by a general verdict, to deprive him of the benefit of handing them over, in his own discharge to the plaintiff.

In support of his motion he now cited the act of 1705, 1 *St. Laws* 60.; the 2d section of which directs, that " if an attach-
" ment shall be made for goods or effects, and the garnishee
" plead he had no goods or effects in his hands at the time of
" the attachment or at any time after, and the plaintiff prove
" the contrary, the jury in such case, being satisfied that the
" proof is plain and full, shall find for the plaintiff, *and say*
" *what goods or effects they find in the garnishee's hands;*
" whereupon judgment shall be entered, that appraisement
" may be made of the said goods or effects so found by the
" jury, and a precept shall be granted, requiring the sheriff to
" get them appraised; *and if the garnishee will not produce*
" *them*, then execution shall be forthwith awarded for the va-
" lue thereof, according to appraisement, to be levied upon
" the lands, tenements, goods and chattels of the garnishee."
He argued that by this law it is clear, that the garnishee is answerable for the value, only in the event of a refusal to deliver the goods; that the office of the jury is limited to a finding of the specific goods and effects, preparatory to an appraisement by another tribunal; and that even after the

*Upon the plea of nulla bona to a scire facias against a garnishee, the jury must find the specific goods in the garnishee's hands; a verdict finding effects of a certain value in the defendant's hands, is bad. But if they find the goods, they may also find their value, to save the necessity of a special inquest.*

1808.

CRAWFORD
v.
BARRY.

appraisement, it is competent to the defendant to prevent execution, by giving up the property attached. The propriety of the law is obvious. The garnishee may be justified in various ways, in pleading *nulla bona*. He may contend that the goods were sold to him; that he sold them and was never paid for them; that they belong to a third person, and the like; and yet if the decision is against him, he may prefer a surrender of the goods, to payment of their value. The law, therefore, contemplating him merely as a stakeholder, and perceiving that it would be contrary to the first principles of justice, either to deprive him of a full defence, or to make him a purchaser of the goods against his will, allows him an alternative after the plea is decided against him. The present verdict takes it away. The law makes him a debtor only after refusal to deliver the goods; this verdict makes him so, without a demand, and in spite of a tender. Whatever may have been the practice under the act, it cannot repeal a provision so express. In fact a judgment upon such a verdict would be erroneous; it would be for the money; whereas the judgment should be *quod fiat appretiatio;* such is the direction of the law, and such is the uniform practice under the custom of *London*, from which the law is borrowed. *Lex Londinensis* 35. *City Liberties* 14. *Privilegia Lond.* 257. The hardship too of the present case is grievous. The jury never saw the goods, and have given 800 dollars, for what are not worth fifty. Now that the plea is found against him, the defendant does not wish to keep them; and they shall be delivered over immediately, upon condition that the verdict be released.

*Rawle* contra. An instance of appraisement by a special inquest, under the attachment law, has never been known. The jury who try the issue, find the value, which saves both time and expense; and if the practice has not arisen under a law of 1722, 1 *St. Laws* 185, which empowers the court, upon giving any interlocutory judgment, to charge a jury at the bar to assess the damages, it is so completely within the spirit of it, as to have its sanction. It is also the practice in *London*, according to the case of *Pearse* v. *Calcott*, (a) which says that the value ought to be found before judgment. It will not answer at this day to take up the law in question, without the practice

(a) *Sir W. Jones.* 406.

under it. No law has been more extended by construction.
The very proceeding by *scire facias* is not to be found in its
letter; but it has been adopted as the best mode of enforcing
its principles. It becomes then a question, what is the spirit of
the law in application to this case. The garnishee, contrary to
his duty, retains the goods long after the attachment, and sup-
ports his possession by a plea which is false. In the mean time
the goods diminish in value, or perish entirely; and then he
claims a release from the attachment, upon delivering the da-
maged articles, or upon delivering nothing, in case they have
perished. That such a claim cannot be supported, seems mani-
fest; it would be rewarding a breach of duty. How is it to be
defeated, and the justice of the case attained? Not by an ap-
praisement after verdict, for that must follow the value at the
time of appraisement; no other fact is submitted to the ap-
praisers. There is no way, but to leave it with the jury, who
decide upon the truth of the plea, who receive evidence of the
delay, and of its effect upon the goods attached; and therefore
if the principle of the garnishee's liability beyond the value at
the time of verdict be adopted, they must be entitled to fix its
extent; and the amount of the present verdict forms no objec-
tion. But it is said the jury must, at all events, find the speci-
fic articles. The necessity of finding the goods is at an end,
if the garnishee has no right to deliver them up in satisfaction.
But in addition to this, the jury have very inadequate means
of forming such a report; the facts rest in the knowledge of
the garnishee; and although, by an act of assembly, the plain-
tiff may examine him upon oath, it is a proceeding to which
it is sometimes very dangerous to resort. The objection to
such a finding should come from the plaintiff, and not from the
defendant.

TILGHMAN C. J. This case comes before us on a motion by
the defendant for a new trial. The defendant is garnishee in
a foreign attachment against *Thomas O'Gormond*. The plaintiff
having established his cause of action against *O'Gormond*, by
a writ of inquiry of damages, issued a scire facias against the
defendant, who appeared and pleaded nulla bona, upon which
issue was joined. The jury found that the defendant had
goods of *O'Gormond* in his hands to the value of eight hundred

and one dollars and thirty cents, but did not say what these goods were.

The defendant, in support of his motion for a new trial, has urged several reasons; but the principal one is this, that the jury have greatly overvalued the goods, and by not finding what they were, have deprived him of the benefit, which the law allows him, of delivering them up to the plaintiff, instead of paying the estimated value. He has offered to deliver to the plaintiff all the goods in his possession; but the plaintiff declines to receive them, and insists on having the amount of the jury's valuation in money.

It does not appear that this point has ever been brought before the court. It is probable, that in most cases the garnishee has either given up the goods without contest, or a debt due from the garnishee has been attached; in which case there would be no goods to give up. The court must now decide the construction of the attachment act, which was made so long ago as the year 1705. By the *second* section of this act, (1 *St. Laws* 60.) it is enacted, that " if an attachment shall " be made of goods or effects, and the garnishee plead he had " no goods or effects in his hands at the time of the attach- " ment, or any time after, and the plaintiff prove the contrary, " the jury in such case, being satisfied that the proof is plain " and full, shall find for the plaintiff, *and say what goods or* " *effects they find in the garnishee's hands;* whereupon judg- " ment shall be entered that appraisement may be made of " the same goods or effects so found by the jury, and a pre- " cept shall be granted, requiring the sheriff to get the same " appraised; *and if the garnishee will not produce them,* then " execution shall be forthwith awarded for the value thereof " *according to the appraisement,* to be levied upon the lands " and tenements, goods and chattels of the garnishee." By the *fourth* section it is provided that after judgment obtained by the plaintiff, he shall, *before sale and after execution is awarded,* find security that if the defendant in the attachment shall within a year and a day come into court, and disprove the debt recovered by the plaintiff against him, or discharge the same with costs, that then the plaintiff shall restore the said goods or the value thereof.

It seems extremely clear that the object of this law was to procure for the plaintiff, satisfaction of his debt out of the

*goods of the defendant;* and that the garnishee was not to be 1808. liable, unless he refused to produce those goods after it had been found by verdict that they were the property of the defendant. The jury are expressly directed to say *what goods or* *effects* they find in the garnishee's hands, in order that an appraisement may be made of them. It seems to have been the practice for the *jury* to value or appraise the goods; and to this I see no objection, although not strictly conformable to the act, because it saves the expense of a writ of appraisement. But there is no authority for the jury, by any mode of finding, to take from the garnishee the right of surrendering the goods and discharging himself from the obligation of paying the value. There is not one word in the act, which looks like an intent to charge the garnishee if he offers to produce the goods. The plaintiff's counsel have argued that it is extremely difficult to prove exactly what the goods are. This is very true; and to assist the plaintiff in that respect, it is provided by the act of 28th *September* 1789, (2 *St. Laws* 733) that interrogatories may be administered to the garnishee, which he shall answer on oath. It is objected that the plaintiff may have no confidence in his oath. To this I can only say, that if the plaintiff will go to trial, without taking the examination of the garnishee, and without satisfactory evidence to prove that the goods in his hands are the property of the defendant, and to shew what the goods are, he has no right to expect a verdict in his favour; because he affords the jury no sufficient ground to discharge the duty required of them by law.

If the plaintiff will accept the goods offered by the garnishee, there will be no occasion for another trial. If he will not, I am of opinion that there should be a new trial to supply the defect of this verdict.

YEATES J., SMITH J., and BRACKENRIDGE J. concurred.

New trial *nisi*.